**Calvin (Kevin) CLARK, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. ED 90209.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 27, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 15, 2008.

Application for Transfer Denied
Sept. 30, 2008.

---

1. Todd Davies, Patient's husband, brought a     loss of consortium claim.

J. Gregory Mermelstein, Office of the Missouri Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for Respondent.

KURT S. ODENWALD, Judge.

### Introduction

Calvin (Kevin) Clark (Movant) appeals the motion court's denial, following a hearing, of his Rule 29.15 motion for post-conviction relief as untimely filed. We affirm.

### Background

Following a jury trial, Movant was convicted of one count of first-degree assault, one count of armed criminal action, and one count of attempted first-degree robbery. Movant was sentenced to consecutive terms of imprisonment for life, 30 years and 15 years, respectively. Immediately following sentencing, the trial court advised Movant that, if he filed an appeal, a motion for relief under Rule 29.15 must be filed within 90 days of the issuance of the appellate court's mandate. Movant indicated his understanding.

Movant filed a notice of appeal on July 2, 2004. His direct appeal was heard by the Missouri Supreme Court, after this Court transferred his case. On August 25, 2006, the Missouri Supreme Court issued its mandate, affirming Movant's convictions and sentences. *See State v. Clark,* 197 S.W.3d 598 (Mo. banc 2006), cert. denied, —— U.S. ——, 127 S.Ct. 1141, 166 L.Ed.2d 893 (2007). Thereafter, Movant filed a petition for a writ of certiorari with the United States Supreme Court. Movant's appellate counsel (Appellate Counsel), believing the time for filing a post-conviction case was stayed pending a ruling by the United States Supreme Court on a certiorari petition, informed Movant that he had until 90 days after the United States Supreme Court ruled on his certiorari petition to file his Rule 29.15 motion. Movant's petition was denied on January 16, 2007, and he filed his Motion to Vacate, Set Aside or Correct the Judgment or Sentence on March 26, 2007. The motion court denied his motion as untimely filed and denied his Motion to Deem Pro Se and Amended Rule 29.15 Motions Timely Filed. This appeal follows.

### Points on Appeal

Each of Movant's four points on appeal claim the motion court clearly erred in ruling that Movant's pro se Rule 29.15 motion was untimely filed because the ruling denied Movant his rights to due process of law and access to the court and remedy for injury under the Fifth and Fourteenth Amendments to the United

States Constitution and Article I, Sections 10 and 14 of the Missouri Constitution.

In his first point, Movant avers that a pro se motion filed within 90 days of a denial of certiorari by the U.S. Supreme Court is timely under Rule 29.15. Movant first contends that Rule 29.15 is silent or ambiguous as to the filing deadline for a pro se motion when a certiorari petition has been filed, but Rule 29.15 contemplates that a proceeding under the rule would not occur until after the conviction and appeal. Movant suggests that his conviction was not "final" and the appeals process was not "complete" until the denial of certiorari. Movant also claims that it is illogical to file or proceed with a Rule 29.15 motion while a certiorari petition is pending because of the possibility that the matters could be heard simultaneously in the motion court and the U.S. Supreme Court, with potentially conflicting results and consequences. Movant further claims that filing a pro se motion within 90 days of denial of certiorari does not result in the unwarranted or intentional delay, or the stale claims which Rule 29.15 is intended to prevent.

In his second point, Movant argues his pro se motion should be deemed timely filed because Movant made an "honest" mistake when he filed his motion based on erroneous advice from Appellate Counsel, did not intend to cause delay or stale claims, and did not cause unwarranted or intentional delay.

In his third point, Movant claims he was denied his rights to effective assistance of counsel and conflict-free counsel. He argues his pro se motion should be deemed timely filed because Appellate Counsel was ineffective and operated under an actual conflict of interest, which adversely affected her performance because: 1) she failed to understand the time limits of Rule 29.15 when she gave Movant erroneous instruction concerning when to file his motion; and 2) by giving that erroneous instruction upon which Movant relied, Appellate Counsel made it impossible for Movant to litigate claims of ineffective assistance of appellate counsel in connection with his direct appeal.

In his fourth point, Movant claims he was denied his rights under Rule 29.15 because he was abandoned by Appellate Counsel as a result of her erroneous instruction on the filing deadline for his pro se motion and his reliance on that advice. Movant argues the untimely filing was due solely to the fault of Appellate Counsel, and that because he made an "honest" mistake based on her advice, Movant's pro se motion should be deemed timely filed.

### Standard of Review

We review a motion court's denial of a Rule 29.15 motion to determine whether the court's findings and conclusions are clearly erroneous. Rule 29.15(k). We deem the findings and conclusions clearly erroneous only if a full review of the record leaves us with the definite and firm impression that a mistake has been made. *Spells v. State*, 213 S.W.3d 700, 701 (Mo. App. W.D.2007).

### Discussion

The Missouri Supreme Court issued its mandate in Movant's direct appeal on August 25, 2006. On November 6, 2006, Movant filed a petition for writ of certiorari with the United States Supreme Court. The United States Supreme Court denied his petition on January 16, 2007. Movant filed his pro se Rule 29.15 motion on March 26, 2007.

A pro se Rule 29.15 motion must be filed within 90 days of the appellate court's mandate in an appellant's direct appeal. Rule 29.15(b). The time limitations of Rule 29.15 are valid and mandatory.

*Spells,* 213 S.W.3d at 701. Because an untimely filed motion deprives the motion court of jurisdiction, the motion court had no alternative but to dismiss the motion. *Id.* Here, Movant filed his pro se motion 212 days after the Missouri Supreme Court issued its mandate in his direct appeal, and 69 days after the United States Supreme Court denied his petition for certiorari.

### Effect of Filing Petition for Certiorari

■ In his first point, Movant claims that a pro se motion filed within 90 days of a denial of certiorari by the U.S. Supreme Court is timely filed under Rule 29.15. Movant argues that Rule 29.15 is "silent" or "ambiguous" as to the time limit for filing a motion when a certiorari petition is filed, and that this silence or ambiguity must be resolved in his favor. In support of this argument, Movant points to the language contained in Rule 29.15(a) that makes the rule applicable to persons "convicted of a felony after trial claiming that the conviction or sentence imposed violates the constitution and laws of this state...." Movant asserts that his conviction was not "final" and the appeals process was not completed until the United States Supreme Court denied his petition for certiorari. Thus, he argues his motion is timely because it was filed within 90 days of the denial of certiorari, the event that made his conviction "final."

Contrary to Movant's assertion, Rule 29.15 is not silent or ambiguous as to when post-conviction motions are due. In fact, the rule contemplates and provides for varying scenarios that could occur following a conviction or sentencing. If no appeal was taken, a defendant's motion must be filed "within 180 days of the date the person is delivered to the custody of the department of corrections." Rule 29.15(b). If a defendant's direct appeal resulted in the entry of a new judgment or sentence and the defendant appealed the new judgment and sentence, his motion must be filed within 90 days after the date the mandate of the appellate court was issued affirming the new judgment or sentence. *Id.* If no appeal of the new judgment or sentence was taken, the motion must be filed "within 180 days of the later of: (1) The date the person is delivered to the custody of the department of corrections; or (2) The date the new judgment or sentence was final for purposes of appeal." *Id.*

■ In instances where, as here, a defendant directly appealed his judgment of conviction or the sentence imposed upon him, Rule 29.15(b) requires the defendant seeking post-conviction relief to file a motion to vacate, set aside or correct the judgment or sentence "within 90 days after the date the mandate of the appellate court is issued affirming such judgment or sentence." We find no ambiguity in this language. In circumstances such as Movant's, the issuance of the appellate court's mandate is the event that triggers the 90-day limitation, *regardless of whether a petition for certiorari is filed.* This language establishes a date that is certain and readily ascertainable as a benchmark for calculating the timeliness of a motion filing. The rule's "silence" regarding the filing of a certiorari petition simply indicates that such an action does not impact the time provision.[1]

---

1. A petition for writ of certiorari must be filed within 90 days of the judgment or order sought to be reviewed. If a motion for rehearing is filed, the writ petition must be filed within 90 days of the denial of the motion, or, if the motion for rehearing is granted, within 90 days of the subsequent entry of judgment. *See* Sup.Ct. R. 13. A defendant who is contemplating filing a petition for writ of certiorari could simultaneously file his timely motion for post-conviction relief pursuant to Rule 29.15. The 90-day jurisdictional re-

Moreover, Movant's "final conviction" argument is inconsistent with the rule's provision for instances when a defendant does not take a direct appeal of his judgment or sentence. When no direct appeal is taken, the post conviction relief motion must be filed within 180 days of the defendant's delivery to the custody of the department of corrections. Rule 29.15(b). Applying Movant's argument in such instances would imply that the non-appealing defendant's conviction is not "final" until the defendant is delivered into custody. However, Rule 81.05 clearly indicates that, for purposes of appeal, a judgment becomes final at the expiration of 30 days following its entry if no timely authorized after-trial motions are filed. Rule 81.05(a)(1).

Movant alternatively asserts that filing a motion for a remedy under Rule 29.15 while a certiorari petition is pending is illogical because the parties could find themselves litigating the Rule 29.15 case simultaneously with the direct appeal to the United States Supreme Court, with potentially conflicting results and consequences. This argument overlooks the state appellate court's ability and routine practice to grant continuances or stays upon good cause shown.

Movant further argues that Rule 29.15 should not be interpreted or applied mechanistically to always deny relief. In support of this argument, Movant cites to *Glover v. State*, 225 S.W.3d 425 (Mo. banc 2007) (holding signature requirement was not jurisdictional and did not deprive movant of his right to proceed under Rule 29.15 where both pro se and amended Rule 29.15 motion were timely filed, but movant failed to sign both); *Nicholson v. State*, 151 S.W.3d 369 (Mo. banc 2004) (transferring proceeding to proper venue and treat-

ing motion as timely filed under Rule 29.15 where movant timely filed motion in wrong venue and state statute allows a court in which a case was wrongly filed to transfer the case to the division or circuit where the matter could have been brought); and *Spells v. State*, 213 S.W.3d 700 (Mo.App. W.D.2007) (holding that motion received 97 days after issuance of mandate was deemed "timely filed" due to minor clerical mistake where movant mailed his pro se Rule 29.15 motion to arrive timely at court address used for notice of direct appeal, but had motion returned to him by the post office because the court address had changed and the forwarding order filed with the post office had expired). Movant avers that filing a pro se motion within 90 days of a denial of a certiorari petition does not cause the delay Rule 29.15 intended to prevent or result in stale claims, and urges us to hold his motion was filed timely.

While we acknowledge the circumstances that bring Movant to this appeal, the facts in the cases cited by Movant are significantly distinguishable from those before us in that the pro se Rule 29.15 motions in each of these three cases were initially filed within the rule's jurisdictional time requirements. Movant's pro se Rule 29.15 motion was not. Moreover, the mistakes involved in *Glover, Nicholson*, and *Spells*—filing in the wrong venue, omitting a signature, and mailing to a previous address—were clerical in nature. Here, Movant's untimely filing was not due to any clerical error. Neither *Glover, Nicholson*, or *Spells* are instructive to this Court on the issue presented.

Because the issuance of the appellate court's mandate begins the time period for filing a Rule 29.15 motion, the motion

quirement of Rule 29.15 does not restrict a defendant's right to seek certiorari from the

United States Supreme Court.

court did not clearly err in concluding that Movant's motion was untimely filed under Rule 29.15. Point denied.

*Honest Mistake*

■ In his second point, Movant argues that his pro se motion should be deemed timely filed because he did not intend to cause, nor did he cause, unwarranted or intentional delay, or stale claims, but rather, made an "honest" mistake based on Appellate Counsel's erroneous advice. Again, while we understand Movant's present circumstance stems from his reliance upon advice of his counsel, we are unable to grant Movant the relief he seeks because Rule 29.15 simply contains no authority for granting time extensions and makes no allowance for good cause shown or excusable neglect. *Matchett v. Missouri*, 119 S.W.3d 558, 559 (Mo.App. S.D. 2003). The appellate courts of this state have repeatedly held that the time limits of Rule 29.15 are valid and mandatory. An untimely motion deprives the motion court of jurisdiction, and the court must dismiss the motion even if not requested to do so by the state. *Id.* (omitting cites). We are constrained by the requirements of Rule 29.15. Regardless of the reason, Movant filed his pro se Rule 29.15 motion more than 90 days after the Missouri Supreme Court issued the mandate in his direct appeal. The 90–day requirement is mandatory. Rule 29.15(b); *Spells*, 213 S.W.3d at 701. Therefore, the motion court lacked jurisdiction to consider his motion. *Id.* Point denied.

*Conflict of Interest*

■ In his third point, Movant raises the issue of whether Appellate Counsel was ineffective and operated under an actual conflict of interest that adversely affected her performance when she misadvised Movant of the filing deadline for his Rule 29.15 motion. Movant claims that Appellate Counsel rendered ineffective assistance of counsel when she failed to understand the application of the time limits of Rule 29.15, and that Movant's interests were in conflict with Appellate Counsel's interests when she incorrectly advised him of the filing deadline. Movant suggests that Appellate Counsel benefited from the erroneous advice because Movant is now precluded from litigating any claims of ineffective assistance of counsel that he might have against Appellate Counsel, as well as his trial counsel. Movant maintains that prejudice is presumed in such circumstances and required the trial court to treat his Rule 29.15 motion as timely filed.

First, we note that Movant is not totally precluded from litigating ineffective assistance of counsel claims because he arguably could petition for federal post-conviction relief with a petition for federal habeas corpus. However, we further conclude that Appellate Counsel did not operate under an actual conflict of interest that adversely affected her performance.

The conflict alleged by Movant is similar to that alleged by the movant in *Echols v. State*, 168 S.W.3d 448 (Mo.App. W.D.2005). Echols claimed his post-conviction counsel "abandoned" him by failing to file a motion for reconsideration or notice of appeal and claimed counsel had an "actual conflict of interest" because he represented Echols on his direct appeal and "therefore would have been reluctant to assert his own ineffectiveness as appellate counsel." *Id.* at 454. Although the court did not address Echols' conflict-of-interest argument because it became moot in view of the court's disposition of Echols' other points on appeal, the court stated that it was "inclined to disagree" with Echols' claims of conflict of interest. *Id.* at 455. The court distinguished Echols' claims of "actual conflict of interest" from those found in *State v.*

*Griddine,* 75 S.W.3d 741 (Mo.App.2002), and *State v. Taylor,* 1 S.W.3d 610 (Mo. App.1999), and noted that the conflict of interest in each of these two cases existed because appointed counsel refused to file a post-conviction motion for their clients, and also attempted to dissuade their clients from filing pro se motions for post-conviction relief. *Echols,* 168 S.W.3d at 455.

We likewise disagree with Movant's contention that Appellate Counsel had an "actual conflict of interest." Unlike the circumstances of *Griddine* and *Taylor,* Movant does not allege that his appellate counsel refused to act on his behalf or attempted to dissuade him from filing his pro se motion for post-conviction relief pursuant to Rule 29.15, only that she mistakenly gave him incorrect advice. In *Taylor,* the Western District found an actual conflict of interest existed because, in advising Taylor not to file a Rule 29.15 motion, Taylor's counsel "was caught between his obligation to do his best for Taylor and a desire to protect his own reputation and financial interests." *Taylor,* 1 S.W.3d at 612. Significant also is the fact that Appellate Counsel was not Movant's post-conviction counsel. "A trial attorney's representing a defendant on direct appeal and in a postconviction motion in which the claim is ineffective assistance of trial counsel creates an inherent conflict of interest for the attorney." *Id.* Likewise, in *Griddine,* the Western District found Griddine had established that his direct appeal counsel had an actual conflict of interest that adversely affected his performance because Griddine's direct appeal counsel advised him not to file a Rule 29.15 motion. *Griddine,* 75 S.W.3d at 745 (when Griddine asked his direct appeal counsel to file a Rule 29.15 motion on his behalf, his direct appeal counsel told him that he did not need to file the motion and that filing one would only hurt his case

and cause him to stay incarcerated longer).

In order to establish a conflict of interest, a movant must prove that his counsel either did something or neglected to do something on the movant's behalf that was detrimental to the movant's interests and advantageous to another's interest. *Lomax v. State,* 163 S.W.3d 561, 564 (Mo.App. E.D.2005). For prejudice to be presumed, the movant must show that an actual conflict of interest affected his counsel's performance. *Id.* In *Lomax,* Lomax alleged that his inability to pay his counsel created a divergence of interests, which motivated his counsel to tell Lomax that he would not take his case to trial until his legal fees were paid and that it was too late for him to withdraw from the case. *Id.* Lomax further alleged that his counsel accepted payment of his fees from Lomax's girlfriend and then pursued her interest in having Lomax plead guilty so that he could get out of jail sooner. *Id.* A similar situation existed in *Price v. State,* 171 S.W.3d 154 (Mo.App. E.D.2005), where Price alleged that his counsel specifically told him that he would not take his case to trial until Price paid his legal fees. This Court concluded that, although a defendant's failure to pay his legal fee does not necessarily give rise to a conflict of interest, Price's inability to pay created a "divergence of interests between Price and counsel that affected counsel's performance." *Id.* at 157–58. We further determined that the alleged conduct was detrimental to Price's interest in trying his case because Price claimed he would not have pleaded guilty if his counsel had not coerced him to do so for financial reasons. *Id.* at 158. The alleged conduct was advantageous to his counsel's interest in getting paid for his trial work. *Id.*

The circumstances before us here are distinguishable from the above situations.

Movant does not allege that Appellate Counsel's conflict of interest arose from financial interest on her part, a desire to protect her reputation, or an effort to vindicate her own conduct. Rather, Movant merely alleges, and Appellate Counsel admits, that she failed to understand the law and believed Movant would have 90 days after the denial of his certiorari petition to file his Rule 29.15 motion. From this unfortunate occurrence, Movant attempts to create a conflict-of-interest issue by now asserting that Appellate Counsel, by honestly giving him incorrect advice as to the deadline for filing, had an actual conflict of interest that adversely affected her performance.

We conclude that Movant's counsel did not operate under an actual conflict of interest that adversely affected her performance. Point denied.

*Abandonment*

█ In his fourth point, Movant claims that he was abandoned by his appellate counsel under Rule 29.15 because she gave him erroneous advice on the filing deadline for his pro se motion and he relied on that advice. Movant avers that his motion should be deemed timely filed because his mistake, based on his counsel's advice, was "honest," and the untimely filing was his counsel's fault, not his. Abandonment by post-conviction counsel is limited to two instances: 1) where counsel failed to take any action with respect to filing an amended motion, thereby depriving the movant meaningful review of his claims; and 2) where counsel fails to take any action with respect to filing an amended motion despite his awareness of the need to do so. *Simmons v. State*, 240 S.W.3d 166, 171 (Mo.App. W.D.2007). Our Supreme Court has consistently refused to expand the scope of abandonment. *Id.* "A claim of abandonment of counsel arises only when the original motion was filed pro se and post-conviction counsel is appointed to re-

view it, as required by Rule 29.15(e)." *Id.* Movant's claims do not fall with the narrow definition of abandonment recognized by our courts.

█ Although Movant attempts to fashion his argument to portray abandonment by appellate counsel, Movant is actually "re-packaging" his claims of ineffective assistance of counsel. *See State v. Lyons*, 129 S.W.3d 873, 874 (Mo. banc 2004) (movant argued he was abandoned; where post-conviction counsel's affidavit stated that he had no strategic reason for failing to raise the issue of movant's mental competency and failed to recognize the merits of the argument, court concluded claim was merely one of ineffective assistance of post-conviction counsel). As we noted when we addressed Movant's claim in his second point that he made an "honest" mistake based on his appellate attorney's erroneous advice, Rule 29.15 makes no allowances for good cause shown or excusable neglect. *Matchett*, 119 S.W.3d at 559. Point denied.

*Conclusion*

While the application of the stringent requirements of Rule 29.15 may seem unfair where a movant relies upon incorrect advice of counsel, the late filing deprived the motion court of jurisdiction, and left it with no alternative but to deny Movant's motion. Accordingly, the motion court's judgment is affirmed.

LAWRENCE E. MOONEY, P.J., and BOOKER T. SHAW, J., Concur.